**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No.  19-135** |
| | ) | |
| **DONDI SEARCY,** | ) | |
| **QUANTEL SEARCY, and** | ) | |
| **CHRISTOPHER SHANER** | ) | |

<u>**Opinion and Order on Pretrial Motions**</u>

Presently before the Court are fourteen pretrial motions filed by Defendants Dondi

Searcy, Quantel Searcy, and Christopher Shaner.  All three of the filing Defendants, along with

six other codefendants, are charged in a twenty-four count Indictment alleging violations of the

Controlled Substances Act.  ECF No. 3.  All nine Defendants are charged in Count 1 with

conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine, from in

and around 2017 to in and around May 2019.[1]  Mr. Shaner is only charged in Count 1.  In

addition to the conspiracy charge, Dondi Searcy is charged with two counts of distribution and

possession with intent to distribute cocaine, and one count of attempt to distribute and possession

with intent to distribute cocaine.  Counts 19, 20, & 21.[2]  Quantel Searcy is charged with three

counts of distribution and possession with intent to distribute cocaine, in addition to the

conspiracy charge.  Counts 22, 23, & 24.[3]

---

[1]  Specifically, Count 1 alleges that the Defendants conspired to distribute and possess with intent to distribute 5 kilograms or more of a mixture an substance containing a detectable amount of cocaine and 280 grams or more of a mixture an substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. § 846, from in and around 2017 to in and around May 2019.

[2]  Only Dondi Searcy is named in Counts 19 and 20, which charge distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C).  He and co-defendant Sergio Murillo are named in Count 21, which charges attempt to distribute and possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(ii).

[3]  Counts 22, 23, & 24 charge Quantel Searcy with three counts of distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) ().

The Motions filed by the three Defendants are as follows.  Christopher Shaner filed a Motion for Brady, Giglio and other Additional Discovery Materials, [and] Motion for Disclosure of Additional Rule 16 Materials, and Early Disclosure of Jencks Materials, ECF No. 533; and Motion for Notice Pursuant to Federal Rule of Evidence 404(b), ECF No. 535.  Dondi Searcy filed a Motion for Early Disclosure of Jencks Materials, Materials Pursuant to Brady, Giglio and Other Discoverable Materials, ECF No. 575; Motion for Notice Pursuant to F.R.E. 404(b), ECF No. 576; Motion to Preserve Rough Notes, ECF No. 577; and Motion to Sever Offenses, ECF No. 587.  Quantel Searcy filed a Motion for Relief from Prejudicial Joinder of Offenses Pursuant to Federal Rule of Criminal Procedure 14(A), ECF No. 579; Motion for Bill of Particulars, ECF No. 580; Motion to Suppress Evidence Obtained from Mobile Tracking Device, ECF No. 581; Motion to Suppress Evidence (obtained from call detail records), ECF No. 582; Motion for Grand Jury Transcripts, ECF No. 583; Motion for Early Disclosure of Jencks Material, ECF No. 584; Motion to Suppress Evidence (obtained from the search of his residence), ECF No. 597; and Motion for James Hearing, ECF No. 598.  An evidentiary hearing will be held to address Quantel Searcy's three suppression motions filed at ECF Nos. 581, 582, and 597.[4]  The court addresses the remaining eleven motions herein.

### I.  Dondi Searcy's Motion to Preserve Rough Notes

Dondi Searcy requests that the Court order the government to instruct its investigators to retain their rough notes.  ECF No. 577.  Mr. Searcy "requests the preservation and production of all materials relating to interviews, surveillance, controlled buys postal inspections, and similar investigative activities involved in this matter."  ECF No. 577, at ¶ 6.  The specific materials he

---

[4]  It is unknown at this time, due to the COVID-19 pandemic, when the Court may schedule an in-person evidentiary hearing.  A video evidentiary hearing, if consented to by Quantel Searcy, may be scheduled as soon as practical.  The Court notes that an in-person suppression hearing for co-defendant Sergio Murillo will be scheduled as soon as circumstances permit.

requests are handwritten rough notes; draft or rough memoranda; handwritten draft or rough reports of investigative summaries; text messages, emails, or other investigative notes exchanged between agents; and any additional rough notes made during the investigation.  Id.  With respect to the materials requested, Mr. Searcy also requests that he be provided with the identity of the maker of the notes, dates of preparation of notes, and the occurrences to which such notes refer. Id. at ¶ 8.

In its present Omnibus Response, the government incorporates its argument, set forth in its August 17, 2020 Response (ECF No. 589) to Christopher Shaner's previously decided Motion to Produce and Retain Rough Notes (ECF No. 531).  See Omnibus Resp. at 11, ECF No. 609; and Op. and Order, Aug 21, 2020, ECF No. 599.  Referring to the government's previously filed opposition brief, the government states that it "has advised its agents to preserve traditional rough notes commonly taken during surveillance, during an interview, during a similar event, and handwritten draft reports."  Gov't Resp. to Shaner Mot. 2, ECF No. 589.  The government also states that emails and text messages "are automatically preserved pursuant to agency policies."  Id.

Independent of the government's direction to its officers to retain such material, the United States Court of Appeals for the Third Circuit requires the government to retain rough notes and writings  In United States v. Vella, 562 F.2d 275 (1977) the Court of Appeals held that "rough interview notes of [law enforcement officers] should be kept and produced so that the trial court can determine whether the notes should be made available to the defendant under the rule in Brady v. Maryland, 373 U.S. 83 (1963), or the Jencks Act."  Id. at 276.  In United States v. Ammar, 714 F.2d 238 (3d Cir. 1983), the Court of Appeals expanded the category of what must be retained to include rough reports; holding that "the government must retain and, upon

motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced." Id. at 259.  In Ammar, the Court acknowledged that a rough draft is not necessarily a Jencks Act statement until it is refined to the point where a finding can be made that the witness has "adopted or approved" the rough draft as a statement, such as where a law enforcement official presents a handwritten draft to a supervisor.  Id.

Defendant's request for an Order directing the government to retain and produce all rough notes relating to law enforcement activities undertaken in this case will be granted in part and denied in part.  The Motion will be granted as to the preservation of rough notes that fall within the purview of Vella and Ammar.  As noted, the government has already instructed law enforcement officers to retain such material and has also instructed the officers to retain rough notes taken during surveillance and "during similar events."  Id.  The motion will be denied as to any request for retention of material not falling within the above categories. Accordingly, we grant Defendants' motion and require the government to preserve any such materials.

The Motion will be denied, as premature, with respect to Defendant's request that the government produce rough notes.  Defendant is entitled to the production of such material only to the extent that it falls within the purview of Brady, Giglio v. United States, 405 U.S. 150 (1972), or the Jencks Act.  The government has indicated that it is aware of its obligations to produce such material to the extent it falls within the purview of Brady exculpatory material and Giglio impeachment material, however the government states that none of the rough notes constitute Brady material.  As to Giglio Material, the government asserts that it is premature to produce such material as it has not determined its trial witnesses and such early disclosure may

endanger the witnesses.  To the extent any rough notes and investigative reports fall within

<u>Giglio</u> or the Jencks Act, the government states that it intends to follow its usual practice of

producing such material shortly before trial.

Accordingly, Dondi Searcy's Motion to Preserve Rough Notes (ECF No. 577) is

GRANTED as to the preservation of rough notes.  The government is ordered to preserve rough

notes consistent with this Opinion and its obligations under <u>Vella</u> and <u>Ammar</u>.  The Motion is

DENIED as to the preservation of any other material.  IT IS FURTHER ORDERED that the

Motion is DENIED, as premature, as to the production of any rough notes.[5]

## II. Quantel Searcy's Motion for Bill of Particulars

Quantel Searcy has filed a motion requesting that the Court issue an Order directing the

government to file a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).  ECF

No. 580.  Federal Rule of Criminal Procedure 7(f) provides:

> The court may direct the government to file a bill of particulars. The defendant
> may move for a bill of particulars before or within 14 days after arraignment, or at
> a later time if the court permits. The government may amend a bill of particulars
> subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f).  A bill of particulars is a "'formal, detailed statement of the claims or

charges brought by a plaintiff or a prosecutor.'"  <u>United States v. Urban</u>, 404 F.3d 754, 771-772

(3d Cir. 2005) (quoting Black's Law Dictionary 177 (8th ed. 2004)).  "The purpose of a bill of

particulars is "to inform the defendant of the nature of the charges brought against him, to

adequately prepare his defense, to avoid surprise during the trial and to protect him against a

---

[5] Quantel Searcy has adopted Christopher Shaner's Motions, one of which was a Motion for Rough Notes.  The
Court resolved Mr. Shaner's Motion on August 21, 2020.  ECF No. 599.  The resolution herein of Dondi Searcy's
Motion is in accord with the Court's Opinion as to Mr. Shaner.  As Quantel Searcy correctly states, the Court's
ruling, ordering the government to preserve rough notes consistent with the Court's August 21, 2020 Opinion, and
relevant case law, imposes said obligation on the government as to the entirety of this case.  Q. Searcy Reply 8, ECF
No. 613.  Therefore, as requested by Quantel Searcy, since no separate Opinion or Order is required to be issued in
Quantel Searcy's name, the Court's Opinion resolving Christopher Shaner's Motion for Rough Notes applies equally
to Quantel Searcy.  <u>Id.</u> at 9.

second prosecution for an inadequately described offense."  United States v. Addonizio, 451
F.2d 49, 63-64 (3d Cir.1972).  "Only where an indictment fails to perform these functions, and
thereby 'significantly impairs the defendant's ability to prepare his defense or is likely to lead to
prejudicial surprise at trial,' will we find that a bill of particulars should have been issued."
Urban, 404 F.3d at 771-772 (quoting United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir.1989)
(citing Addonizio, 451 F.2d at 62-63)).

       For a conspiracy charge, the United States Court of Appeals for the Third Circuit "has
held that a defendant is not entitled to a list of uncharged overt acts and uncharged criminal
conduct, nor is he entitled to a list of the identities of Government witnesses."  United States v.
Cardillo, No. CRIM.A. 13-121-2 JBS, 2015 WL 3409324, at *5 (D.N.J. May 27, 2015) (citing
United States v. Di Pasquale, 740 F.2d 1282, 1294 (3d Cir.1984) (other citations omitted).  A
"request for the 'when, where and how' of any overt acts not alleged in the indictment is
"tantamount to a request for 'wholesale discovery of the Government's evidence,' which is not
the purpose of a bill of particulars under Fed. R. Crim. P. 7(f)."  United States v. Armocida, 515
F.2d 49, 54 (3d Cir.1975) (quoting Addonizio, 451 F.2d at 64).  A "bill of particulars is not a
discovery tool by which defendants obtain disclosure of every detail of the theory and
preparation of the Government's case."  Cardillo, 2015 WL 3409324, at *5.

       With respect to the alleged conspiracy charged in Count 1, Mr. Searcy requests a bill of
particulars that identifies the date and place the alleged conspiracy agreement began, the words
that constitute the alleged agreement, and which words were allegedly spoken by Mr. Searcy and
others (particularly R.P.), the full names of the alleged co-conspirators with whom Mr. Searcy
allegedly agreed, and the scope of the alleged agreement.  Id. at 2.  Mr. Searcy also asks that the
bill of particulars identify the relationship to the conspiracy of any unindicted co-conspirators
and how any statements or actions by unindicted co-conspirators relate to the conspiracy.  Id.
Mr. Searcy argues that without a more definite time frame for the conspiracy (beginning date and
duration), as well as related information regarding who was involved, what was said, and where

conduct occurred, he may be exposed to subsequent prosecutions for the three alleged drug trafficking offenses he is charged with.  He argues that if the conspiracy was not in existence at the time when the three drug trafficking charges occurred, such conduct cannot be in furtherance of the conspiracy.  He also argues that if the government provides specificity as to each alleged co-conspirator's involvement in the conspiracy, it will aid him in preparing his defense.  Finally, in his Reply Brief, Mr. Searcy emphasizes the need for the government to file a bill of particulars to specifically provide a start date of the conspiracy by year and month, and to clarify the nature of Mr. Searcy's alleged conspiratorial relationship with "RP."  Q. Searcy Reply Br. 5-6, ECF No. 613.

In its Omnibus Response, the government provides an extensive and detailed factual background of the investigation and sets forth how information learned during one investigation lead law enforcement to discover additional alleged criminal activity related to the charged conspiracy, which prompted further investigation.  ECF No. 609, at 1-9.  The government's factual recitation identifies at least ten other individuals who eventually were indicted on drug charges (some of whom have been charged in a separate indictment).  The government also identifies Rondell Palmer as "RP," and discusses what RP did, when he did it, and with whom. The government further identifies, and provides details of, two intercepted telephone calls involving Quantel Searcy.  The intercepted telephone calls occurred on September 8, 2018 and September 14, 2018.

During pretrial discovery, the government provided Mr. Searcy with affidavits in support of search warrants and affidavits in support of Title III wiretap orders.  The affidavits are represented to be lengthy.  The government has provided laboratory reports and photographs of the execution of search warrants.  Mr. Searcy has also been given access to search warrant

records, the intercepted communications, and line sheets of intercepted communications.  The government has also revealed significant evidence recovered after search warrants were executed at various locations.  Mr. Searcy and his counsel are also permitted to inspect physical evidence in the agent's files.  Finally, the Assistant United States Attorney represents that he "remains available to answer questions about the evidence against" Mr. Searcy.

The government contends that it is unable to provide a specific starting date for the conspiracy, as requested by Quantel Searcy, as the government does not know when the conspiracy specifically started.  As noted, Mr. Searcy has narrowed his request, explaining that he wants the government to identify the starting month and year of the conspiracy alleged in the Indictment; not the actual start date of the conspiracy.  In its Omnibus Response, the government states, consistent with the Indictment, that the alleged conspiracy began in 2017; however, the government also states that Quantel Searcy's three alleged drug distribution offenses occurred within the conspiracy period.   Mr. Searcy's separate alleged drug trafficking offenses occurred on February 9, 2017, May 4, 2017, and July 7, 2017.  The government further indicates that the conspiracy was ongoing as of February 9, 2017.  Given that the Indictment charges that the period of the conspiracy is from 2017 to May 2019, the government's additional information, provided in its Omnibus Response, reveals that the alleged conspiracy was in progress as of February 9, 2017.  Thus, with respect to the conspiracy alleged in the Indictment, the government has now informed Mr. Searcy that the alleged conspiracy was in existence in the month of February and the year 2017.  The government also states that it intends to present evidence "that the conspiracy was formed even before 2017 and, in any event, prior to the three distribution counts at issue."  Omnibus Resp. 12.  Therefore, the alleged conspiracy here, as charged in the Indictment, is limited to a start date of no earlier than January 1, 2017.  As

represented by the government, it has evidence to support such a beginning date for the conspiracy. Mr. Searcy therefore has sufficient knowledge of the approximate date (January 2017) of the alleged conspiracy as charged in the Indictment to prepare a defense. Moreover, the government has provided additional information directly related to Mr. Searcy that allegedly demonstrates that his participation in the conspiracy was active in early 2017. Specifically, the government proffers that it has evidence that a confidential informant advised law enforcement in February 2017 that Quantel Searcy was involved in a large-scale cocaine distribution operation. Omnibus Resp. 16.

As to the nature of Mr. Searcy's alleged conspiratorial relationship with RP, Mr. Searcy argues that such information is essential to his defense. In particular he asserts that if the government has evidence that Mr. Searcy is a coconspirator, then statements by RP offered against Mr. Searcy would likely be admissible under Federal rule of Evidence 801(d)(2)(E). Mr. Searcy maintains that the government has so far "produced no evidence that [Mr. Searcy] had any contact with Palmer [from August 2018 through September 2018], or at any time for that matter." Q. Searcy Reply Br. 6. Mr. Searcy acknowledges the government's evidence regarding Quantel's connection to RP, which is as follows:

- RP called Dondi on September 8, 2018 to discuss an in-process drug shipment that would be arriving soon;
- Dondi called Quantel, later on September 8, 2018, to let him know that the drug shipment was imminent and that Quantel should be ready with money for payment for the drugs;
- On that same telephone call, Quantel told Dondi that Dondi could come by and get Quantel's money "whenever.";
- Quantel called Dondi, who was in Florida, on September 14, 2018. Dondi told Quantel that the drug shipment should be arriving when Dondi got back from Florida on September 16, 2018, or shortly thereafter.
- The government's evidence shows that RP, along with Sergio Murillo, were transporting the drugs by vehicle from California to the Western District of Pennsylvania on September 16, 2018 and intercepted the vehicle in Illinois on September 17, 2020.

9

Omnibus Resp. 3-4.

Based on the above evidence the government concludes that "Quantel was financing part of the purchase of the cocaine that Palmer intended to deliver to Dondi."[6]  Omnibus Resp. 4.  Mr. Searcy challenges the government's assertions related to the September 2018 activities, and asks if the government is "alleging defendant joined an existing conspiracy with Palmer in September 2018, or is it alleging something else?"  Q. Searcy Reply Br. 6.

In this case, the government is not alleging that Mr. Searcy joined the alleged conspiracy during the above September 2018 activities.  Evidence that a defendant engages in relevant conduct, such as the above telephone calls connecting Mr. Searcy indirectly to RP, is not necessarily evidence of the moment in time when the defendant joins the conspiracy.  Smith v. United States, 568 U.S. 106, 107 (2013) ("Upon joining a criminal conspiracy, a defendant's membership in the ongoing unlawful scheme continues until he withdraws").  As noted, the government states that the alleged conspiracy was in progress prior to Mr. Searcy's first alleged drug trafficking charge on February 9, 2017, allegedly committed in furtherance of the conspiracy.  Mr. Searcy therefore now knows that he is alleged to be a part of the conspiracy no later than February 9, 2017.  In addition, the government is not required to show that Mr. Searcy had direct contact with RP in order to be a member of the charged conspiracy.  United States v. De Peri, 778 F.2d 963, 975 (3d Cir.1985) ("It is well established that one conspirator need not know the identities of all his coconspirators, nor be aware of all the details of the conspiracy in order to be found to have agreed to participate in it") (citation omitted).  Mr. Searcy is thus sufficiently informed as to the timing of the conspiracy, when he is alleged to have been a

---

[6] Mr. Searcy disputes that the government is able to positively identify him as the speaker on the phone call and he also disputes the government's interpretation of the conversations.  Q. Searcy Reply Br. 6 n. 2.  Of course, such disputes are for jury to determine at trial.

member, and that, in at least one instance, he indirectly participated with a leader of the conspiracy in furtherance of alleged crimes during the time frame of the conspiracy.

In conclusion, the Indictment is clearly worded and gives Quantel Searcy notice of the essential facts supporting the alleged drug conspiracy, identifies the approximate time frame, the coconspirators, the two controlled substances, and the weight of each controlled substance.  The information provided by the government during discovery, along with the factual information set forth in the Omnibus Response, adds significant and specific detail to the charge in the Indictment.  The information Quantel Searcy possesses is sufficiently clear to enable him and his counsel to adequately prepare a defense, protect against double jeopardy, and to avoid unfair surprise at trial.   United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972) ("motion seeking a bill of particulars is properly denied where the record as a whole demonstrates that ample opportunity exists for adequate preparation of the defense").  Accordingly, Quantel Searcy's Motion for a Bill of Particulars is DENIED.

### III.  Quantel Searcy's Motion for Grand Jury Transcripts

Quantel Searcy has filed a Motion for Grand Jury Transcripts.  Q. Searcy Mot., ECF No. 583.  Mr. Searcy seeks "some level of disclosure" of Grand Jury transcripts, subject to the Court's balanced resolution of the competing interests at stake."  ECF No. 583, at ¶¶ 8, 10.  Mr. Searcy proposes that the Court review summaries of grand jury transcripts and balance the relevant policy interests.  Id. at 3.  He further proposes that the Court determine if only a portion of transcripts should be produced, whether to redact the identify of witnesses, and to impose any other limitations the Court deems appropriate on Mr. Searcy's access to the transcripts.  Id.

As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity."  United States v. McDowell, 888 F.2d 285, 289 (3d Cir.

1989).  A defendant may be entitled to review grand jury testimony after a witness "testified on direct examination at trial if their grand jury testimony was related to the subject matter of their trial testimony." United States v. Jackson, 363 F. App'x 159, 161 (3d Cir. 2010) (citing 18 U.S.C. § 3500(e); United States v. Wong, 78 F.3d 73, 83 (2d Cir.1996); and United States v. Budzanoski, 462 F.2d 443, 454 (3d Cir.1972)).  In addition, Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides that "[t]he court may authorize disclosure - at a time, in a manner, and subject to any other condition that it directs - of a grand jury matter: (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. Proc. 6(e)(3)(E)(ii).  Finally, [t]o support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy." McDowell, 888 F.2d at 289 (citing, United States v. Proctor & Gamble Co., 356 U.S. 677, 683 (1957).

Mr. Searcy has not shown that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.  Fed. R. Crim. P. 6(e)(3)(E)(ii).  In addition, Mr. Searcy's request, though tempered with a willingness for production of limited and redacted transcripts, does not identify any particularized need for the transcripts.[7]  Accordingly, the Motion for Grand Jury Transcripts is DENIED.

## IV. Dondi Searcy's Motion to Sever Offenses and Quantel Searcy's Motion for Relief from Prejudicial Joinder

Dondi Searcy has filed a Motion to Sever Offenses, asking the Court to sever his two individual drug distribution charges at Counts 19 and 20 .  ECF No. 587.  Quantel Searcy has

---

[7] The government asserts that to the extent that a witness that testified before the grand jury will also testify at trial, the government will provide said grand jury transcripts to the defendant consistent with the government's obligations under the Jencks Act and Rule 26.2.  ECF no. 609, at 18.

filed a Motion for Relief from Prejudicial Joinder of Offenses Pursuant to Federal Rule of Criminal Procedure 14(A), asking the Court to sever his three individual drug distribution charges at Counts 22, 23, and 24.  ECF No. 579.  The law applicable to both Motions is the same, however, the Motions will be addressed individually as Quantel Searcy specifically states he is not joining Dondi Searcy's Motion.  Q. Searcy Reply 2 n. 1.

"Motions to sever are governed by Federal Rule of Criminal Procedure 14, which permits the trial court to grant a defendant's motion for severance if it appears that the defendant will be prejudiced by a joint trial with other defendants."  United States v. Console, 13 F.3d 641, 655 (3d Cir. 1993).  Federal Rule of Criminal Procedure 14(a) states:

> **(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).  "The Rule places the burden of showing prejudice from the joinder on the defendant seeking severance."  United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991) (citing De Peri, 778 F.2d at 983).  "Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal."  United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981).  A defendant "must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial."  Id.  "Motions for severance rest in the sound discretion of the trial judge."  Id.

### A. Dondi Searcy's Motion to Sever Offenses

The drug distribution charges asserted against Dondi Searcy are alleged to have occurred on July 31, 2017 and August 22, 2017.  Dondi Searcy asserts that the alleged drug transactions he is charged with occurred long before the alleged conspiracy began, in his estimation, in November 2017.  He also contends that there is no commonality between the persons involved in

13

his individual alleged drug transactions and the larger alleged conspiracy, other than himself.  He avers that because the event that began the charged conspiracy occurred, as he asserts, in November 2017, the alleged drug trafficking offenses could not be considered as conduct within the overriding conspiracy.

The Indictment alleges that the conspiracy began in 2017, which is enough to include Counts 19 and 20's alleged dates of July and August 2017.  The government also represents that it will introduce evidence to show that the alleged conspiracy was in existence prior to 2017. The government further asserts that Dondi Searcy's individual drug transactions in July and August 2017 "are evidence of the underlying conspiracy."  Omnibus Resp. 12.  Because the offenses sought to be severed are in fact alleged to be part of the underlying conspiracy, Dondi Searcy has not met his burden to show that he would be clearly and substantially prejudiced at a trial of all charges against him.

### B.  Quantel Searcy's Motion for Relief from Prejudicial Joinder

Quantel Searcy seeks to sever the three drug distribution counts asserted against him that allegedly occurred between February 9, 2017 and July 17, 2017.  Quantel Searcy argues that the alleged drug distribution charges predate any evidence of the existence of the charged conspiracy.  Quantel Searcy relies on evidence provided by the government thus far to argue that said evidence demonstrates that the conspiracy did not begin until December 2017.  Quantel Searcy presents a detailed, evidence-based argument that the alleged conspiracy in this case, and related alleged conspiracy cases, was not in existence when the drug transactions occurred earlier in 2017.

The government provides the same response to Quantel Searcy as it does to Dondi Searcy: that the alleged drug distribution counts occurred during the alleged conspiracy.  As

stated, the government asserts it has evidence to show that the conspiracy was in existence prior to 2017.  The government also asserts that an unnamed witness will provide evidence to establish that Quantel Searcy's alleged drug trafficking charges were done in furtherance of the conspiracy.  In Reply, Quantel Searcy states that something more than overlapping time frames is necessary to establish that the individual drug distribution offenses were committed in furtherance of the conspiracy.  Q. Searcy Reply Br. 2.  Quantel Searcy also notes that the government did not offer a proffer of what the unnamed witness's testimony would be.  He argues that the government is simply asking the Court to take its word for it that it has the necessary evidence to back up the charges in the Indictment.

At this stage of the proceedings, with the uncertainty as to when a jury trial may be scheduled due to the COVID-19 pandemic, the Court agrees with the government that severance of the Counts is unwarranted at this time.  A defendant is not entitled to wholesale discovery of the government's evidence, and there are limitations on when the government is required to turn over certain materials.  For example, the government is not required to identify its witnesses at this time.  However the government does represent, as an officer of the Court that an unidentified witness, along with other evidence, will establish that the conspiracy began earlier than 2017, and that the individual drug distribution charges were committed in furtherance of said conspiracy.  Taking the government's representations as true, Quantel Searcy is unable to meet his burden to show that he would be clearly and substantially prejudiced at a trial of the charges against him.

### C.  Conclusion as to the Severance Motions

As trial approaches, the government may produce additional evidence and proffers of witnesses' testimony, regarding both Searcy's individual drug distribution offenses.  To the

extent either of the Searcy's believe that said evidence clearly shows that the offenses are

unrelated to the alleged conspiracy, the Court will entertain a properly grounded, renewed

motion for severance.  As trial approaches, the Court encourages the government to consult with

counsel for Dondi Searcy and Quantel Searcy to assist counsel in providing evidence so that each

may determine that the individual drug offenses are or are not related to the alleged criminal

conspiracy.  Accordingly, Dondi Searcy's Motion to Sever Offenses, and Quantel Searcy's

Motion for Relief from Prejudicial Joinder, are DENIED, without prejudice.

### V.  Defendants' Motions for Jencks, Brady, Giglio and Other Discoverable Material

All three moving Defendants request additional discovery materials pursuant to Brady,

Giglio, and Jencks.  ECF Nos. 533, 575; & 584.[8]  In their Motions, Defendants argue that the

voluminous discovery materials produced thus far do not, in their estimation, establish the

elements of the alleged conspiracy.  They further assert their belief that the government's critical

evidence, in addition to wiretap evidence, will consist of cooperating witnesses and investigating

agents.  Defendants therefore argue that Brady, Giglio, and Jencks materials will prove to be

critically relevant evidence to preparation of an effective defense.  Thus, they conclude that the

sooner such materials are produced, the more time the defense will have to prepare an effective

defense.

### A.    Mr. Shaner and Dondi Searcy's Requests for Brady Materials

Christopher Shaner and Dondi Searcy seek production of all exculpatory evidence, and

all material and information that may be favorable to each of them, pursuant to Brady v.

Maryland, 373 U.S. 83 (1963).  "In Brady, the Supreme Court held that due process required that

[upon request] the government produce all "exculpatory" evidence, which includes both

---

[8]  Although Christopher Shaner and Dondi Searcy indicate in the title of their motions that they are seeking "other
discovery materials," the Motions are limited to requests for Brady, Giglio, and Jencks materials.

'[m]aterials ... that go to the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness.'" United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994) (quoting United States v. Hill, 976 F.2d 132, 134-35 (3d Cir.1992)). Once a defendant makes a request for such materials, the government is obligated to disclose such exculpatory evidence, "in time for its effective use at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983) ("No denial of due process occurs if Brady material is disclosed to [defendants] in time for its effective use at trial").

In its response to Dondi Searcy's Motion, the government incorporates its response to Mr. Shaner's Motion. As to Mr. Shaner, the government responds that it is unaware of any Brady exculpatory material.[9] The government further indicates that it is aware of its continuing obligation under Brady to provide Defendants with exculpatory material. There is no indication that the government has not met its obligations under Brady; therefore, the Motions for production of exculpatory material pursuant to Brady are DENIED, without prejudice.

**B. Mr. Shaner and Dondi Searcy's Request for Giglio Materials**

Christopher Shaner and Dondi Searcy also request all potential impeachment material pursuant to Giglio v. United States, 405 U.S. 150, 154 (1972). See also United States v. Perdomo, 929 F.2d 967 (3d Cir. 1991). The Supreme Court in Giglo extended its ruling in Brady to encompass impeachment evidence relating to the credibility of a government witness. Giglio, 405 U.S. at 154. Any inducements or rewards given to government witnesses, including but not limited to money, grants of immunity, plea bargains, promises of leniency or recommendations thereof, or preferential treatment, would fall under impeachment evidence that must be disclosed

---

[9] By incorporating its Response to Mr. Shaner in responding to Dondi Searcy, it is not clear that the government is also stating that it is unaware of any Brady exculpatory as to Dondi Searcy. In any event, as stated in the body of the Opinion, the government is under a continuing obligation to provide such materials to all Defendants.

under <u>Brady</u>.  <u>See</u> <u>Higgs</u>, 713 F.2d at 43 ("Evidence that government witnesses have been granted immunity and/or leniency for their cooperation is clearly relevant on the issue of their credibility").

The government indicates that, while it has not determined which witnesses it will call at trial, the government is aware of certain materials that would tend to be useful in impeaching potential government witnesses.  The government hesitates to provide such material at this time because it would identify the witness and potentially subject the witness to harassment or retaliation by one or more of the defendants.  Instead, the government proposes to provide <u>Giglio</u> impeachment material shortly before trial, and to provide it in sufficient time for defense counsel to make effective use of the material at trial (while not prematurely identifying a government witness).

In Mr. Shaner's Motion, he notes that the government's investigation is complete, as far as he can tell, and there is no reason to believe that Mr. Shaner is a threat to any of the government's witnesses.  The Court notes that in any criminal case, especially a large multi-defendant case, such as this one, harassment and retaliation of a potential government witness may come from persons other than the defendant.  To that extent, the government's interest in protecting witnesses against retaliation for testifying takes precedence over Mr. Shaner's statement that <u>he</u> would not retaliate against a witness.  The government shall provide <u>Giglio</u> material in sufficient time for its effective use at trial so that it will not result in a delay of the trial, or delay during the trial.  Accordingly, the Motions for production of impeachment material pursuant to <u>Giglio</u> are DENIED, without prejudice.

### C.  Defendants' Request for Early Disclosure of Materials under the Jencks Act

Finally, all three Defendants seek early disclosure of Jencks material.  Pursuant to the Jencks Act, no statement or report made by a government witness or potential government witness "shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).  Upon motion of the defendant, "[a]fter a witness called by the United States has testified on direct examination, the court shall" shall order the government to produce any statement of the witness, which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b).

Defendants request the production of such material thirty days prior to trial.  A plain reading of the statute demonstrates that there is no basis upon which the court can order the government to provide investigative statements as Jencks material prior to the time a witness has testified on direct examination at trial.  At best, a court can encourage the government to provide the defense with Jencks Act materials in time to avoid unnecessary delays during trial.  Here, the government, aware of the potential delays by holding Jencks material until after a witness is called, states that it will provide such material shortly before trial.  The Court reiterates that a trial of this matter will involve multiple defendants and concerns an extensive alleged conspiracy, therefore in order not to delay trial, it is imperative that the government and the defense work together to ensure that trial will flow smoothly.  Accordingly, the Court having no power to order the production of Jencks material prior to trial, Defendants' Motion seeking early disclosure of Jencks material are DENIED.

### VI.  Mr. Shaner and Dondi Searcy's Motions Seeking Rule 404(b) Evidence

Christopher Shaner and Dondi Searcy have filed nearly identical Motions seeking 404(b) materials:  ECF Nos. 535 & 576.  Federal Rule of Evidence 404(b) provides that "[e]vidence of

any other crime, wrong, or act is not admissible to prove a person's character in order to show

that on a particular occasion the person acted in accordance with the character."   Fed. R. Evid.

404(b)(1).  However, such evidence of prior bad acts "may be admissible for another purpose,

such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  Rule 404(b)'s notice requirements, which

were amended effective December 1, 2020, [10] provide as follows:

> **(3)  Notice in a Criminal Case**.  In a criminal case the prosecutor must:
> **(A)** provide reasonable notice of any such evidence that the prosecutor
> intends to offer at trial, so that the defendant has a fair opportunity to meet
> it;
> **(B)** articulate in the notice the permitted purpose for which the prosecutor
> intends to offer the evidence and the reasoning that supports the purpose;
> and
> **(C)** do so in writing before trial – or in any form during trial if the court,
> for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).  What constitutes "reasonable notice" depends on "the circumstances

and complexity of the prosecution."  United States v. Johnson, 218 F. Supp. 3d 454, 462 (W.D.

Pa. 2016).  In general, courts have found that what constitutes "reasonable notice" under Rule

404(b) is in the range of seven to ten days or one to two weeks prior to trial.  United States v.

Long-Parham, 183 F. Supp. 3d 746, 750 (W.D. Pa. 2016); United States v. Buckner, 2020 U.S.

Dist. LEXIS 5485, at *14–15 (M.D. Pa. Jan. 13, 2020).

Here, both Defendants request that the Court order the Government to provide Rule

404(b) information not only as to each moving Defendant, but also, because this is an alleged

conspiracy, as to all coconspirators.  Defendant's request the Court Order the government to

---

[10]  Federal Rule of Evidence 404(b) was amended effective December 1, 2020.  According to the Committee Note, and as set forth above, the amendment principally imposes additional notice requirements on the prosecution. The amendment also eliminated the requirement that the defendant must make a request before notice is provided.  Amended Rule 404(b) governs all proceedings commenced December 1, 2020 and thereafter, and insofar as just and practicable, to pending proceedings.  The Court finds that it is just and practicable to apply amended Rule 404(b) to cases, like the instant case, in a pretrial posture where a trial date has not been set.

provide the information immediately.  In its Omnibus Response, the government responds that it

is aware of its obligations under Rule 404(b) but has not yet determined whether it will seek to

introduce any Rule 404(b) evidence.  Depending on the nature and amount of Rule 404(b)

evidence the government intends to introduce in this multi-defendant case, there is the possibility

that multiple Motions in Limine will be filed seeking to challenge the 404(b) evidence.  The

Government indicates that it will provide any 404(b) information it intends to introduce at trial

no later than ten days prior to trial.

The Court is not inclined to order the government to produce Rule 404(b) information

this far in advance of trial.  Trial in this matter has not been set.  In addition, the COVID-19

pandemic has significantly impacted Court operations and contributed to resulting delays in all

jury trials.  As of October 30, 2020, all criminal jury selections and jury trials have been

continued to February 8, 2021, pending further order of court.  Administrative Order, Oct. 30,

2020, Misc. No. 2:20-mc-394-MRH.  Should the government anticipate that multiple challenges

to 404(b) evidence will be filed, the government is encouraged to provide its Rule 404(b)

evidence far enough in advance of trial so as to limit the possibility of delay.  The Court declines

to order the government to provide Rule 404(b) evidence at this early stage.  Accordingly,

Defendants Christopher Shaner and Dondi Searcy's Motions to disclose Rule 404(b) evidence

are DENIED, as premature.

### VII.    Quantel Searcy's Motion for a <u>James</u> Hearing

Finally, Mr. Searcy requests a pre-trial <u>James</u> hearing to determine whether the

government can introduce statements of alleged co-conspirators against him, pursuant to Federal

Rules of Evidence 104 and 801(d)(2)(E) and <u>United States v. James</u>, 590 F.2d 575 (5th Cir.

1979).  ECF No. 598.  Mr. Searcy explains that his request for a <u>James</u> hearing is, in part,

connected to his other requests seeking details of the conspiracy and severance of other charges. Mr. Searcy's argues that he is unable to determine, at this time, if the government has sufficient evidence to establish that he was ever a part of the alleged conspiracy, and if not, the admissibility of coconspirator statements against him are in question. Q. Searcy Reply Br. 9.

Mr. Searcy acknowledges that "[i]n the Third Circuit James hearings are accepted but 'carefully considered and sparingly used' because 'control of the order of proof at trial' is within the trial judge's discretion." United States v. Escalante-Melgar, No. CR. 16-453 (CCC), 2020 WL 968091, *13 (D.N.J. Feb. 28, 2020) (quoting United States v. Cont'l Grp., Inc., 603 F.2d 444, 456-57 (3d Cir. 1979)). As such, Mr. Searcy agrees with the government that a James hearing at this juncture is premature. Omnibus Resp. 19-20; Q. Searcy Reply Br. 9. As explained above, the additional information Mr. Searcy seeks from the government, to the extent the government has such information, will be forthcoming in accord with the applicable law. Thus, the Court agrees that it is premature to consider whether a James hearing should be held. Accordingly, Quantel Searcy's Motion for a James hearing is DENIED, without prejudice, as premature.

## VIII.   Conclusion

In summary, and for the reasons stated above, the Defendants' Motions are resolved as follows.

As to Dondi Searcy's Motions:  The Motion for Early Disclosure of Jencks Materials, Materials Pursuant to Brady, Giglio and Other Discoverable Materials, ECF No. 575, is denied as to the request for Jencks material, and denied, without prejudice, as to Brady and Giglio material.  The Motion for Notice Pursuant to F.R.E. 404(b), ECF No. 576, is denied, as premature.  The Motion to Preserve Rough Notes, ECF No. 577, is granted as to the preservation

of rough notes; denied as to the preservation of any other material; and denied, as premature, as to the production of any rough notes.  The Motion to Sever Offenses, ECF No. 587, is denied, without prejudice.

As to Quantel Searcy's Motions:  The Motion for Relief from Prejudicial Joinder of Offenses Pursuant to Federal Rule of Criminal Procedure 14(A), ECF No. 579, is denied, without prejudice.  The Motion for Bill of Particulars, ECF No. 580, is denied.  The Motion for Grand Jury Transcripts, ECF No. 583, is denied.  The Motion for Early Disclosure of Jencks Material, ECF No. 584, is denied.  The Motion for James Hearing, ECF No. 598, is denied, without prejudice, as premature.

As to Christopher Shaner's Motions:  The Motion for Brady, Giglio and other Additional Discovery Materials, [and] Motion for Disclosure of Additional Rule 16 Materials, and Early Disclosure of Jencks Materials, ECF No. 533, is denied as to the request for Jencks material, and denied, without prejudice, as to Brady and Giglio material.  The Motion for Notice Pursuant to Federal Rule of Evidence 404(b), ECF No. 535, is denied, as premature.


IT IS SO ORDERED.


Dated: December 3, 2020

Marilyn J. Horan
United States District Court Judge